# IN RE ASSESSMENT OF TAXES, COMMERCIAL PACIFIC CABLE COMPANY.

APPEAL FROM TAX APPEAL COURT, FIRST TAXATION DIVISION.

ARGUED DECEMBER 5, 1904.　　DECIDED JANUARY 16, 1905.

FREAR, C.J., HARTWELL AND HATCH, JJ.

TAXATION OF SUBMARINE CABLES—*outside of low water mark and within three mile limit—construction of statute requiring taxation of personal property within the Territory.*

Section 817, C. L., providing that with certain exceptions all "real and personal property within the Territory shall be subject to an annual tax of one per cent. upon the full value of the same" authorizes a tax upon six miles of submarine cables lying beyond the line of low water mark on the island of Oahu and within the zone of three miles in its surrounding waters.

ID.—*submarine cables not real estate.*

The submarine cables are not to be treated as real estate under the tax laws.

ID.—*valuation.*

The aggregate of the invoice price and duties paid on the cables less a deduction of ten per cent. is appropriate for taxable value.

STATEMENT OF CASE AND OF RESPECTIVE ARGUMENTS.

This is an appeal by the tax assessor for the island of Oahu from the decision of the tax appeal court in failing to find a valuation of six miles of cable lying below low water mark and all being within three miles from land. It was returned for nothing, the Cable Company claiming it was not legally assessable, and it was assessed at $42,800. The tax appeal court held that it was not legally taxable.

Robertson & Wilder for appellant:  The whole question hinges on whether this property is within the Territory or not. If within, it is clearly taxable, and if without, it is clearly not taxable.  The statute (C. L., Sec. 817), provides that "except as herein provided all real property and all personal property within the Republic (now Territory) shall be subject to an annual tax," etc.  It is clear that the property in question is not exempt under any Territorial statute, and so the only question is, was it within the territory on January first?  The supreme court has definitely settled the point in controversy in *Hilo Sugar Co. v. Minister of Finance,* 7 Haw. 665.  There, a vessel laden with sugar cleared for San Francisco from Hilo on June 30, but owing to lack of wind did not sail from the port until July 1.  The statute then in force was:  "All personal property within this kingdom not subject to specific taxes shall be subject to an annual tax," etc. (Comp. L., p. 119), and the owner was required to return all property belonging to him or of which he had the "possession, custody or control on the first day of July."  It was held that the sugar on board the vessel was properly taxed to the owner in this kingdom, being within the kingdom on July first.  There, as in the case at bar, the property was situated below low water mark.  If this cable is not within the Territory then that sugar was not within the then kingdom.  In *Brewer & Co. v. Luce,* 6 Haw. 554, sugar was laden on a vessel at Honolulu prior to July 1 and the bills of lading signed and mailed to foreign consignees.  The vessel sailed from Honolulu at noon of July 1.  It was held that the sugar was within this kingdom on July 1 and properly taxable. Although the decision was by a single justice, to wit, the late Chief Justice Judd, still it is right in line with the case at bar. Civil Laws, section 6, expressly limits the effect and operation of laws to property "within the territorial jurisdiction" of this Territory.  See 3 Haw. 296.  Clearly this property is within the territorial jurisdiction of this Territory.  It appears from the evidence that this same property has paid duty to the federal government in order to get into the Territory.  The prop

'erty is not within the Territory for one purpose and without the Territory for another purpose. If the law is as contended for by the taxpayer, all that a man has to do is to take all his property below low water mark on January 1 and keep it there during that day and he cannot be taxed for that property. A vast amount of property is situated below water mark. Under the ruling of the tax appeal court a house built below low water mark cannot be taxed.

Ballou & Marx for appellee: The jurisdiction of the Territory of Hawaii for taxation purposes does not extend out into the ocean beyond low water mark, and therefore the assessment on the cables of the appellee company lying below low water mark out to the three mile limit was illegal. Jurisdiction over the seas for the space of three miles from land is an attribute of and dependent on sovereignty. It has been granted by international law to the sovereigns of the adjoining shores. 1 Farnham on Waters, Secs. 3-3c; Gould on Waters, Sec. 2; *Hardin v. Jordan,* 140 U. S. 371, 381; *Carroll v. Price,* 81 Fed. 137, 141; *Queen v. Keyn,* L. R. 2 Ex. Div. 63. There was at one time serious doubt whether the individual states of the Union possessed such jurisdiction, but it was finally held that they did on the ground that they retained sovereignty in all matters in which they had not granted it to the federal government. *Manchester v. Mass.,* 139 U. S. 240; *Commonwealth v. Manchester,* 152 Mass. 230. A territory has no sovereignty. It is merely a political subdivision, an "organized municipality" for local self government. *Talbott v. Silver Bow Co.,* 139 U. S. 438, 445-6; *Natl. Bank v. Co. of Yankton,* 101 U. S. 129, 133; *Coffield v. Territory,* 13 Haw. 478; *Carroll v. Price,* 81 Fed. 141. It has no powers or authority except such as are expressly or by fair implication conferred on it by Congress. There has been no general delegation of sovereignty by the United States to the Territory of Hawaii nor has there been any express or implied delegation of this particular attribute of sovereignty, *i. e.,* jurisdiction for such purposes as taxation for three miles out to sea. On the contrary the United States holds the title to

and dominion over the surrounding territorial waters in trust for the future state. See 30 U. S. Stats. at Large, p 750; *Shively v. Bowlby,* 152 U. S. 1; *Carroll v. Price,* 81 Fed. 137; 1 Farnham on Waters, p 48. The Territory of Hawaii has been granted general legislative power and that includes the power of taxing property within its limits. But it does not include jurisdiction over the three mile area. Such extra terri-torial jurisdiction is a distinct incident of sovereignty arising as a matter of international right, and has nothing to do with local self government. Territories are said to most closely resemble counties in their nature as political subdivisions. *Natl. Bank v. County,* 101 U. S. 129, 133; *People v. Daniels,* 6 Utah 288, 292; *Coffield v. Territory,* 13 Haw. 478. It is clear that the English counties do not share the national juris-diction out to the three mile line. *Queen v. Keyn,* L. R. 2 Ex. Div. 63. In America the boundaries of counties have sometimes been extended three miles out to sea by statute. Where that has not been done either expressly or impliedly counties by the weight of authority have no jurisdiction over the three mile area though they do include harbors and small bays. See Gould on Waters, Sec. 13. Municipalities have no power to tax prop-erty situated below low water mark. *Gilchrist's Ap.,* 109 Pa. St. 600; *Sioux City Bridge Co. v. Dakota Co.,* 61 Neb. 75. The two Hawaiian cases cited by counsel for the appellant are not in point because they deal with the jurisdiction of the sovereign kingdom of Hawaii. International law strictly speaking con-cedes jurisdiction over the three mile area only for purposes of self protection and of control over navigation and fisheries. Any further assertion of dominion is a political rather than a legal matter in which the courts of any given country must follow the statutes and practice of the legislative and executive depart-ments of the government of that country. 1 Farnham on Waters, Sec. 3b. We have failed to find any assertion by the federal government that jurisdiction over the three mile area includes the power of taxation. On this question Hawaiian cases are of little importance. See *Manchester v. Mass.,* 139

U. S. 240, 258; *U. S. v. Kessler,* 26 Fed. Cas. 766, 775; *The Alexander,* 60 Fed. 914; cf. *Queen v. Keyn,* L. R. 2 Ex. Div. 71; 1 Farnham on Waters, Sec. 3b, note 1. Tax laws should be strictly construed and any doubt resolved in favor of the public. *Valkenburg v. Treas.,* 14 Haw. 182; *Castle v. Luce,* 5 Haw. 321; Cooley on Taxation, p. 200. It should not be assumed that the Territory meant in its tax to avail itself if possible of the national jurisdiction over the three mile area. A cable actually laid on the bottom of the ocean and embedded in the sand is taxable as real estate if at all. See *Vane v. Newcombe,* 132 U. S. 238; *Am., etc., Tel. Co. v. Middleton,* 80 N. Y. 408. But the cables in question cannot be taxed as real estate because the land on which they are located and to which they have become affixed belongs to the federal government and is exempt from territorial taxation.

### OPINION OF THE COURT BY HARTWELL, J.

(Hatch, J., Dissenting.)

The appellant's counsel have correctly stated the question in the case, viz.: "Is this property within the Territory for taxation purposes under the statute which with certain exceptions not in this case declares that all "real and personal property within the Republic" (which by section 9 of the Organic Act must be read "within the Territory") "shall be subject to an annual tax of one per cent. upon the full value of the same." Sec. 817, C. L. The appellee's counsel do not expressly admit although their argument practically concedes that when Hawaii was a sovereign state this statute would have authorized its taxing submarine cables on the high seas between low water mark and within the three mile zone of the surrounding waters. They claim, however, that Hawaiian decisions under the monarchy are not in point both because Hawaii then held all the power over the adjoining waters of an independent nation, and also because the cases referred to property of residents of

Hawaii which was on board of ships cleared for San Francisco but still within the harbors of Hilo and Honolulu. Jurisdiction over property in harbors and ports as it is claimed does not imply jurisdiction over property on the high seas beyond and outside of harbors and ports. It is not clear that the appellee's counsel concede that Congress could delegate to the Territory any portion of its sovereign right over the three mile zone. Their brief mentions that there has been no "express or implied delegation of this particular attribute of sovereignty, *i. e.*, jurisdiction for such purposes as taxation for three miles out to sea." But the argument is clearly and we think unanswerably presented that in the absence of authority "expressly or by fair implication" conferred on it by Congress the legislature of Hawaii cannot exercise over surrounding territorial waters any legislative powers including that of taxation. Section 6 of the Organic Act provides: "That the laws of Hawaii not inconsistent with the constitution or laws of the United States or the provisions of this act shall continue in force, subject to repeal or amendment by the legislature of Hawaii or the Congress of the United States." The statute concerning taxation by fair implication may be regarded as applying to property in territorial waters. The effect of this could not infringe on the exercise by the general government of any sovereign powers for the purpose of national defense, protection of fisheries or any other purpose for which by common agreement of publicists, jurists and courts a nation may make exclusive use of its adjacent seas. The situs of private property on United States public lands within the Territory does not affect the right of the Territory to tax it. It is difficult to see wherein its situs in United States waters surrounding the Territory presents any other condition affecting the taxation of the property than when that situs is on public lands. If national control over national territorial waters adjacent to the coast boundary is restricted to purposes of defense, and does not include the power to tax property having its permanent situs within those waters, then it follows as a matter of course that Congress, having no power itself to tax,

could not have delegated to the Territory of Hawaii any power in that regard. If, on the other hand, Congress could lawfully authorize a national tax on property permanently placed and not in transit within such territorial waters, it could delegate the power to this Territory. No reason is suggested why power to tax property so situated should not be delegated equally with power to tax property on land within the Territory, or why a general power to tax property within the Territory should be limited by inference to the tax of property having its situs on land.

The argument of the appellee is based largely upon the decision in *Regina v. Keyn*, 2 L. R. Ex. Div. 63 (1876), in which six of the judges, including Coleridge, chief justice of the common pleas, Denman, Brett, Lindley, Amphlett and Grove, forming the minority of the court, were of the opinion that the realm of England included the three mile zone outside of the low water mark along the coast. The majority of the court, namely, Cockburn, chief justice of England, Kelly, chief baron of the exchequer, Phillimore, Bramwell, Pollock, Lush and Field, held the direct opposite. Kelly and Pollock also thought that the national control over the three mile limit was for certain limited purposes only and that those purposes did not authorize the application of English criminal law within those limits. All of the minority judges thought that the three mile belt was English territory and that English criminal law extends over it; also that admiralty had jurisdiction of offenses committed therein, whether on foreign ships or not. Gould says of this decision that "it is not certain how far it may be approved in this country." Gould on Waters, Sec. 13.

Woolsey says that the territory of a state includes, besides the terra firma within its boundaries, the waters of the interior seas, lakes and rivers wholly within the same lines, the mouths of rivers, bays and estuaries furnishing access to the land and "the coast sea to the distance of a marine league." Modern writers, he says, "agree substantially in making it" (a marine league) "an incident to territorial sovereignty on the land."

International Law, Sec. 54. Hall, in his treatise on International Law, discusses the views of writers on public law upon the subject of proprietorship of the sea; pp. 155, 157. Referring to the appropriation of marginal seas, straits and enclosed waters for the purpose of fishing rights as well as by effectively commanding such waters, this writer says: "Accordingly on the assumption that any part of the sea is susceptible of appropriation no serious question can arise as to the extent of property in marginal waters;" p. 159. Wheaton, after describing the "maritime territory of a state" as extending to its "ports, harbors, bays, mouths of rivers and adjacent parts of the sea inclosed by headlands," says: "The general usage of nations superadds to this extent of territorial jurisdiction a distance of a marine league, or as far as a cannon-shot will reach from the shore, along all the coasts of the state. Within these limits, its rights of property and territorial jurisdiction are absolute, and exclude those of every other nation." Int. Law, Sec. 177.

If we admit that the English law as held in the *Keyn* case applies to the space outside of low water mark in Hawaii with the exception, we will say, of the space within the outer fringe of reefs, which practically is land-locked, the conclusion does not follow that property of a resident in Hawaii is exempt from taxation which lies within that space and outside of the reef line. On the other hand, in accordance with the minority opinion in that case, as well as with the views of many eminent publicists, the island of Oahu would properly include for purposes of territorial taxation its surrounding waters to the extent of the three mile limit. The importance of this question to the Territory is obvious, for if the Territory has no jurisdiction for taxing purposes over this open sea limit it may have none for the punishment of territorial offenses committed within that space, or for service therein of civil or criminal process. Whatever is true of the outer portion of that limit would also be true of the inner portion as far as the low water mark. As suggested by appellant's counsel, the doctrine contended for by the Cable Company would enable any resident who wishes to

do so to evade payment of taxes on personal property by placing it outside of low water mark on the first day of January when liable to assessment. The inference that Congress did not intend that the tax laws of the Territory should apply to property in territorial waters and that the expression "within the Territory" should mean within its geographical limits would lead to possible consequences of so grave a nature that the inference ought not to be made unless for definite and satisfactory reasons. As stated by Coleridge, C. J., in the *Keyn* case: "The argument *ab inconvenienti* is perhaps not one which sound logic recognizes; and a startling conclusion does not always shew that the premises from which it follows are untenable. But the inconvenience here is so grave, and the conclusion is so startling, as to make it reasonable, I think, to say that the burden of proof lies heavy upon those who disregard the inconvenience, and maintain the conclusion."

The cables are not real property within the meaning of the tax laws. The appellee would not admit that the state could claim them, nor would a claim to them be made by the state on any theory of the law of fixtures. Telegraph and telephone wires are treated in some instances as personal property, although affixed to poles set in the ground. *Newport Co. v. Assessors,* (R. I.) 6 Am. El. Cases 659; *Water Co. v. People,* 140 Ill. 545; *People v. Assessors,* 39 N. Y. 81. It is evident, however, that the valuation of $42,800 made by the assessor for the six miles of the two cables within the three mile limit was excessive. The invoice price, as shown by the exhibits, is $12,833.87, on which duties were paid of $5,579.58, aggregating $18,413.45. We do not know the "life" of submarine cables, but assuming it to be twenty years, there would be an annual depreciation of five per cent. We think a deduction of ten per cent. from the cost price would be appropriate, leaving for taxable value $16,572.10.

*Robertson & Wilder* for appellant.

*Ballou & Marx* for appellee.

HATCH, J., DISSENTING.

The three miles of sub-marine cable, the subject matter of the assessment for taxes in this case, does not lie within the first taxation district of the Territory of Hawaii. The first taxation district comprises the island of Oahu. The island of Oahu stops at low water mark except where there is an outer reef, in which case it may be said to extend to such reef. By no reasonable use of language, however, can the island of Oahu be said to extend any further than this into the ocean. The jurisdiction in the three miles zone surrounding the islands, which extends to a still further distance for revenue purposes, is an attribute of sovereignty of the United States. During the existence of the Republic of Hawaii such sovereignty was vested in the republic. It was ceded, however, upon annexation to the United States. It is not necessary to consider the extent or nature of the jurisdiction of the United States within such zone nor what conditions would arise should Hawaii be made a state of the Union. Under present conditions this sovereignty remains intact in the federal government. It has not been ceded by the federal government to the Territory of Hawaii. I, therefore, dissent from the opinion of the majority of the court.