*** FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER ***

Electronically Filed
Supreme Court
SCWC-24-0000229
30-JUN-2025
11:11 AM
Dkt. 18 OP

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

IN THE MATTER OF THE TAX APPEAL

of

GARY S. SUGANUMA,
DIRECTOR OF TAXATION, STATE OF HAWAI'I,
Respondent/Appellant-Appellee,

vs.

BLAKE GOODMAN and BLANCA GOODMAN,
Petitioners/Appellees-Appellants.

SCWC-24-0000229

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-24-0000229; CASE NO. 1TX151000221)

JUNE 30, 2025

RECKTENWALD, C.J., McKENNA, EDDINS, GINOZA, AND DEVENS, JJ.

OPINION OF THE COURT BY GINOZA, J.

This appeal arises out of a dispute over a renewable energy technologies income tax credit (**RETITC**) and Hawai'i Revised Statutes (**HRS**) § 235-12.5 (Supp. 2011), the statute that governs the RETITC program. The central issue before this court

is whether the Intermediate Court of Appeals (**ICA**) erred in its interpretation of HRS § 235-12.5(f)-(h),[1] and its determination

---

[1] HRS § 235-12.5(f)-(h) (Supp. 2011) states:

(f)   If the tax credit under this section exceeds the taxpayer's income tax liability, the excess of the credit over liability may be used as a credit against the taxpayer's income tax liability in subsequent years until exhausted, unless otherwise elected by the taxpayer pursuant to subsection (g) or (h). . . . Failure to comply with this subsection shall constitute a waiver of the right to claim the credit.

(g)   For solar energy systems, a taxpayer may elect to reduce the eligible credit amount by thirty per cent and if this reduced amount exceeds the amount of income tax payment due from the taxpayer, the excess of the credit amount over payments due shall be refunded to the taxpayer; provided that tax credit amounts properly claimed by a taxpayer who has no income tax liability shall be paid to the taxpayer; and provided further that no refund on account of the tax credit allowed by this section shall be made for amounts less than $1.

The election required by this subsection shall be made in a manner prescribed by the director on the taxpayer's return for the taxable year in which the system is installed and placed in service. . . . An election once made is irrevocable.

(h)   Notwithstanding subsection (g), for any renewable energy technology system, an individual taxpayer may elect to have any excess of the credit over payments due refunded to the taxpayer, if:

(1)   All of the taxpayer's income is exempt from taxation under section 235-7(a)(2) or (3); or

(2)   The taxpayer's adjusted gross income is $20,000 or less (or $40,000 or less if filing a tax return as married filing jointly);

provided that tax credits properly claimed by a taxpayer who has no income tax liability shall be paid to the taxpayer; and provided further that no refund on account of the tax credit allowed by this section shall be made for amounts less than $1.

. . . .

The election required by this subsection shall be made in a manner prescribed by the director on the taxpayer's return for the taxable year in which the system

that the 2012 tax form used for claiming RETITC (**2012 Form N-342**) and its accompanying instructions, both prescribed by the Department of Taxation, State of Hawai'i, are consistent with the applicable statutory provisions.

We hold that 2012 Form N-342 and its accompanying instructions are <u>inconsistent</u> with HRS § 235-12.5(f)-(h). Based on the plain language of the statute, HRS § 235-12.5(f)-(h) (the provisions governing "refundable" or "nonrefundable" treatment of excess tax credit) only apply to situations where a taxpayer's tax credit <u>exceeds</u> their tax liability. Excess tax credit is a threshold qualification for making elections pursuant to those subsections. Accordingly, 2012 Form N-342 is incompatible with the statute because it <u>requires</u> taxpayers who do not have excess tax credit to make irrevocable elections that do not apply to them. The instructions that accompany 2012 Form N-342 also reflect this contradiction and error. Petitioners did not have excess tax credit and were improperly required to make elections inapplicable to them.

We thus vacate the ICA's Judgment on Appeal, and reverse the Tax Appeal Court's Final Judgment. Petitioners are entitled to the RETITC they claimed in 2012.

---

is installed and placed in service. . . . An election once made is irrevocable.

3

## I.    BACKGROUND

On their 2012 Hawai'i income tax return, Petitioners/Appellees-Appellants, Blake Goodman and Blanca Goodman (collectively, **Petitioners**), claimed $17,250 in RETITC associated with solar energy systems installed on their Hawai'i home.  In claiming the RETITC, Petitioners completed and submitted four 2012 Form N-342s with their 2012 Hawai'i income tax return.  On line 42 of the form, despite having no excess tax credit (because their claimed $17,250 tax credit was less than their $25,252 net tax liability[2]), Petitioners were "required" to make an "irrevocable" election "to treat the tax credit" as either: (a) "refundable" (pursuant to HRS § 235-12.5(g) or (h)); or (b) "nonrefundable" (pursuant to HRS § 235-12.5(f)).  Immediately above line 42, the form instructs: "THIS SECTION MUST BE COMPLETED."  Petitioners elected to treat the tax credit as "refundable" (line 42 election).  Given that election, Petitioners answered line 43 and further elected to treat their tax credit as "fully refundable" under an option applicable only to taxpayers who either have tax-exempt income, or who earn an annual joint adjusted gross income of $40,000 or less (line 43 election), pursuant to HRS § 235-12.5(h).

---

[2]      Petitioners' net tax liability was calculated from the information provided on their 2012 Hawai'i income tax return, specifically Form N-11.  According to their 2012 Form N-11, Petitioners' total 2012 tax liability was $33,473, and $8,221 had been withheld from their income that year, making their net tax liability $25,252 ($33,473 - $8,221 = $25,252).

Petitioners admitted that they did not consult the instructions to 2012 Form N-342 when completing their 2012 Hawai'i tax return.

After deducting $8,221 in Hawai'i State income tax withholdings and taking a deduction of the full $17,250 in claimed RETITC from their $33,473 tax liability, Petitioners paid $8,002 in taxes to the Department for 2012.

That same year, the Department of Taxation, State of Hawai'i, audited Petitioners' 2012 Hawai'i income tax return and issued a "Notice of Final Assessment" reducing Petitioners' claimed RETITC by 30% (plus interest), for a total assessment of $5,416.50 in additional tax and interest against Petitioners (**Final Assessment**).[3]  The Final Assessment stated that adjustments were made to Petitioners' 2012 tax return in accordance with HRS § 235-12.5 and the RETITC reduction was imposed as a result of Petitioners making improper irrevocable elections on lines 42 and 43 of their completed 2012 Form N-342s.  The Department noted that "once an election on Form N-342, line 42 is made, it cannot be revoked or amended as provided under section 235-12.5(g), [HRS]."  According to the Final Assessment, Petitioners had irrevocably elected to treat their RETITC as refundable, an election they were not entitled

---

[3]      Per the Department, the amount in the Final Assessment was calculated by taking 30% of Petitioners claimed RETITC (0.30 x $17,250 = $5,175) and adding interest in the amount of $241.50, for a total of $5,416.50 ($5,175 + $241.50 = $5,416.50).

to because their income was not exempt from Hawai‘i taxation and their joint Hawai‘i adjusted gross income exceeded $40,000.

On or around October 18, 2013, Petitioners appealed to the Board of Taxation Review (**Board**), naming Respondent/Appellant-Appellee Gary S. Suganuma,[4] Director, Department of Taxation, State of Hawai‘i (**Director** or **Department**),[5] as the defendant.  On or around February 3, 2015, the Board issued a unanimous decision in favor of Petitioners, holding that their election to treat the RETITC as refundable on line 42 was not irrevocable pursuant to HRS § 235-12.5(f), and ordering that Petitioners be permitted to amend their line 42 and 43 elections on their 2012 Hawai‘i income tax return accordingly (**Board's Decision**).

The Department appealed to the Tax Appeal Court.[6] There, the Department filed a motion for summary judgment (**MSJ**) asking the court to determine that the Department's Final

---

[4]    Gary S. Suganuma, the current director of taxation, is substituted for former director, Maria E. Zielinski, pursuant to the Hawai‘i Rules of Appellate Procedure (**HRAP**) Rule 43(c).  HRAP Rule 43(c) ("When a public officer is a party to an appeal or other proceeding in the Hawai‘i appellate courts in their official capacity and during its pendency dies, resigns, or otherwise ceases to hold office, . . . their successor is automatically substituted as a party.").

[5]    Because the parties refer to the Director and the Department interchangeably, this opinion also does so to avoid confusion.

[6]    The Honorable Gary W.B. Chang presided.

Assessment of $5,416.50 was lawful and valid.  The Tax Appeal

Court granted the Department's MSJ and stated in its order:

> 1.     The Court finds and concludes that [Petitioners]' [2012] Form [N-342], line 42(a) and line 43(b) were irrevocable and [Petitioners] cannot amend their State of Hawaii income tax return for tax year 2012.
>
> 2.     The Director cannot overlook the irrevocable nature of [Petitioners]' election on their [2012] Form [N-342], line 43(b) election.
>
> 3.     [Petitioners] are ordered to pay the Director an additional amount of **$17,250.00** . . . in income taxes due for tax year 2012 based upon the calculation . . . [in the] Court's Minute Order[,] filed on November 14, 2023[.]

Whereas the Board's Decision would have allowed

Petitioners to amend their line 42 and 43 elections on the 2012

Form N-342, the Tax Appeal Court would not.  Under the Tax

Appeal Court's decision, Petitioners would not be entitled to

any RETITC.  The Tax Appeal Court entered its ruling in the

following: (a) Minute Order, filed November 14, 2023; (b) "Order

Regarding Appellant Maria E. Zielinski, Director of Taxation,

State of Hawaii's Motion for Summary Judgment Filed on May 18,

2017[,]" (**MSJ Order**), filed March 15, 2024; and (c) "Final

Judgment Re: Order Regarding Appellant Maria E. Zielinski,

Director of Taxation, State of Hawaii's Motion for Summary

Judgment Filed on May 18, 2017" (**Final Judgment**), filed on March

15, 2024.

Petitioners appealed to the ICA, raising one point of

error:

> The Tax Appeal Court erred as a matter of law and abused its discretion, when it decided that the applicable rules

7

> controlling this case are based on the Director's Tax Form N-342, instead of based on substantive Hawaii law.

On October 17, 2024, the ICA issued a Memorandum Opinion holding, *inter alia*, that the Tax Appeal Court: (1) exceeded its jurisdiction "by increasing [Petitioners]' tax liability to more than the amount of the [Final Assessment,]" in violation of HRS § 232-13 (2001);[7] and (2) should have affirmed the Department's Final Assessment of $5,416.50, based on the plain language of the statute, and the circumstances presented in this case. Suganuma v. Goodman, No. CAAP-24-0000229, 2024 WL 4511252, at \*3-5 (Haw. App. Oct. 17, 2024) (mem. op.). In support of its second holding, the ICA determined that 2012 Form N-342 and its accompanying instructions are "consistent with" HRS § 235-12.5. Id. at \*3-5. As a result, the ICA vacated the Tax Appeal Court's MSJ Order and Final Judgment, and remanded to the Tax Appeal Court with instructions for that court to affirm the Department's Final Assessment of $5,416.50 against Petitioners. Id. at \*6.

We accepted Petitioners' application for writ of certiorari. Petitioners challenge the ICA's interpretation and

---

[7]    HRS § 232-13 (2001) provides, in relevant part, that:

> The jurisdiction of the tax appeal court is limited to the amount of valuation or taxes, as the case may be, in dispute as shown on the one hand by the amount claimed by the taxpayer or county and on the other hand by the amount of the assessment, or if increased by the board, or equivalent county administrative body, the assessment as so increased.

application of HRS § 235-12.5 and its decision to affirm the

Department's Final Assessment.[8]  Petitioners assert that the 2012

Form N-342 and its instructions are incompatible with the

"statutory scheme" of HRS § 235-12.5.  Petitioners contend that:

> The issue is not whether a lazy taxpayer in not carefully reading the [f]orms and [i]nstructions should be hung out to dry for his own errors, but rather should a poorly drafted set of tax [f]orms and [i]nstructions be allowed to penalize those taxpayers, when the laws enacted by the Hawaii legislature are being "altered" by those [f]orms and [i]nstructions in total contravention to the law's simple meaning.

Petitioners further assert that none of the irrevocable

elections forced upon them in Form N-342 are required to be

made under HRS § 235-12.5, because they did not have an

excess tax credit, i.e., a tax credit that exceeded their

tax liability.

In response, the Department asserts that Petitioners'

argument that there *must* be an excess tax credit to take

advantage of the RETITC is nonsensical, and that, based on the

plain language of HRS § 235-12.5, permission to elect

refundability is not dependent on the presence or absence of tax

---

[8]     Petitioners clarify in their application that they do not challenge the portion of the ICA's Memorandum Opinion wherein the ICA (1) vacated the Tax Appeal Court's assessment of $17,250 against Petitioners; and (2) determined that the Tax Appeal Court exceeded its jurisdiction in increasing Petitioners' tax liability to more than the Director's original assessment in violation of HRS § 232-13 and Tax Appeal of County of Maui v. KM Haw. Inc., 81 Hawai'i 248, 915 P.2d 1349 (1996).

Moreover, the Department did not file a petition for writ of certiorari, and thus no party challenges the ICA's ruling that the Tax Appeal Court exceeded its jurisdiction.  In any event, we need not address this issue relating to the Tax Appeal Court's jurisdiction because we resolve this appeal on other grounds.

liability.  The Department asserts that taxpayers are free to claim the RETITC in either refundable or nonrefundable form.

## II.  STANDARDS OF REVIEW

### A.  Statutory Interpretation

> Questions of statutory interpretation are questions of law to be reviewed *de novo* under the right/wrong standard.
>
> > Our statutory construction is guided by the following well established principles:
> >
> > > our foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself.  And we must read statutory language in the context of the entire statute and construe it in a manner consistent with its purpose.
> > >
> > > When there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists.
> > >
> > > In construing an ambiguous statute, the meaning of the ambiguous words may be sought by examining the context, with which the ambiguous words, phrases, and sentences may be compared, in order to ascertain their true meaning. Moreover, the courts may resort to extrinsic aids in determining legislative intent.  One avenue is the use of legislative history as an interpretive tool.
> >
> > This court may also consider the reason and spirit of the law, and the cause which induced the legislature to enact it to discover its true meaning.

Lingle v. Hawai'i Gov't Emps. Ass'n, AFSCME, Local 152, AFL-CIO, 107 Hawai'i 178, 183, 111 P.3d 587, 592 (2005) (internal quotation marks, brackets, and ellipses omitted) (quoting Guth v. Freeland, 96 Hawai'i 147, 149-50, 28 P.3d 982, 984-85 (2001)).

**B.    Summary Judgment**

> This court reviews an award of summary judgment de novo, under the same standards applied by the trial court. Therefore, summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.
>
> Moreover, it is well settled that, in reviewing the decision and findings of the Tax Appeal Court, a presumption arises favoring its actions which should not be overturned without good and sufficient reason.

West Maui Resort Partners LP v. Cnty. of Maui, 154 Hawai'i 121, 131, 547 P.3d 454, 464 (2024) (ellipses omitted) (quoting Kamikawa v. Lynden Air Freight, Inc., 89 Hawai'i 51, 54, 968 P.2d 653, 656 (1998) (internal quotation marks, emphases, and citations omitted)). Where the facts are undisputed and the only question is one of law, we review the Tax Appeal Court's decision under the right/wrong standard. Id. (citation omitted).

### III. DISCUSSION

Petitioners' appeal to this court challenges the ICA's interpretation and application of HRS § 235-12.5(f)-(h). Petitioners assert, *inter alia*, that the ICA and the Department's misinterpretation and misapplication of the challenged provisions is evidenced by the 2012 Form N-342 and its associated instructions, which Petitioners contend are incompatible with the statutory scheme. We agree.

11

This Court has not previously interpreted HRS § 235-12.5. HRS § 235-12.5 governs Hawai'i's RETITC. HRS § 235-12.5 was enacted in 2003 via Act 207. 2003 Haw. Sess. Laws Act 207, § 2 at 580-81. At the time of its enactment, the legislature stated that the purpose of the statute was "to encourage the use of renewable energy systems and reduce the State's reliance on fossil fuel[.]" H. Stand. Comm. Rep. No. 916, in 2003 House Journal, at 1451-52. HRS § 235-12.5 has since been amended multiple times. The version of the statute effective in 2012 is applicable to this case.

For context, HRS § 235-12.5(a)-(d) (Supp. 2011) provides, in relevant part:

> (a) When the requirements of subsection (d) are met, each individual . . . taxpayer that files an individual . . . net income tax return for a taxable year may claim a tax credit under this section against the Hawaii state individual . . . net income tax. The tax credit may be claimed for every eligible renewable energy technology system[9] that is installed and placed in service in the State by a taxpayer during the taxable year. The tax credit may be claimed as follows:
>
> (1) For each solar energy system: thirty-five per cent of the actual cost or the cap amount determined in subsection (b), whichever is less[.]
>
> . . . .

---

[9] HRS § 235-12.5(c) (Supp. 2011) provides, in relevant part, that:

> "Renewable energy technology system" means a new system that captures and converts a renewable source of energy, such as solar or wind energy, into:
>
> (1)  A usable source of thermal or mechanical energy;
> (2)  Electricity; or
> (3)  Fuel.

> (b)   The amount of credit allowed for each eligible renewable energy technology system shall not exceed the applicable cap amount, which is determined as follows:
>
> . . . .
>
>> (2)   For all . . . solar energy systems [other than those for which the primary purpose is to use energy from the sun to heat water for household use], the cap amounts shall be:
>>
>>> (A)   $5,000 per system for single-family residential property[.]
>>
>>  . . . .
>
> (d) For taxable years beginning after December 31, 2005, the dollar amount of any utility rebate shall be deducted from the cost of the qualifying system and its installation before applying the state tax credit.
>
> (e) The director of taxation shall prepare any forms that may be necessary to claim a tax credit under this section, including forms identifying the technology type of each tax credit claimed under this section, whether for solar or wind. The director may also require the taxpayer to furnish reasonable information to ascertain the validity of the claim for credit made under this section and may adopt rules necessary to effectuate the purposes of this section pursuant to chapter 91.

Under HRS § 235-12.5(a), a tax credit may be claimed for each eligible renewable energy technology system installed and placed in service in Hawai'i during the taxable year.  Here, Petitioners claimed they installed solar energy systems on their Hawai'i home in 2012, making them eligible to claim RETITC that same taxable year, pursuant to HRS § 235-12.5(a).  The approximate total cost of Petitioners' installed systems was $60,552.[10]  With their 2012 Hawai'i income tax return, Petitioners submitted four 2012 Form N-342s, claiming a total of $17,250 in

---

[10]    Three of Petitioners' 2012 Form N-342s each claimed an installation cost of $18,025, and the remaining form claimed an installation cost of $6,477, for a combined total claimed installation cost of $60,552.

13

RETITC: three forms each claiming a $5,000 RETITC; and one form claiming a $2,250 RETITC.[11]

        The remaining relevant portions of HRS § 235-12.5 provide:

> (f)   If the <u>tax credit</u> under this section <u>exceeds the taxpayer's income tax liability</u>, the <u>excess of the credit over liability</u> may be used as a credit against the taxpayer's income tax liability in <u>subsequent years</u> until exhausted, unless otherwise elected by the taxpayer pursuant to subsection (g) or (h). . . . Failure to comply with this subsection shall constitute a waiver of the right to claim the credit.
>
> (g)   For solar energy systems, a taxpayer may elect to reduce the eligible credit amount by thirty per cent and if this reduced amount <u>exceeds the amount of income tax payment due from the taxpayer</u>, the <u>excess of the credit amount over payments due shall be refunded</u> to the taxpayer; provided that tax credit amounts properly claimed by a taxpayer who has no income tax liability shall be paid to the taxpayer; and provided further that no refund on account of the tax credit allowed by this section shall be made for amounts less than $1.
>
>     The election required by this subsection shall be made in a manner prescribed by the director on the taxpayer's return for the taxable year in which the system is installed and placed in service. . . . An election once made is irrevocable.
>
> (h)   Notwithstanding subsection (g), for any renewable energy technology system, an individual taxpayer may elect to have any <u>excess of the credit over payments due refunded</u> to the taxpayer, if:
>
> > (1)   All of the taxpayer's income is exempt from taxation under section 235-7(a)(2) or (3); or
> >
> > (2)   The taxpayer's adjusted gross income is $20,000 or less (or $40,000 or less if filing a tax return as married filing jointly);
>
> provided that tax credits properly claimed by a taxpayer who has no income tax liability shall be paid to the taxpayer; and provided further that no refund on account of

---

[11]   The ICA stated in its Memorandum Opinion that Petitioners should have only claimed a RETITC of $5,000. The ICA treated this issue as waived presumably because the Department did not raise the issue in the Final Assessment nor in any of the subsequent appeals. This issue was not raised to this court on certiorari and thus we need not address it.

the tax credit allowed by this section shall be made for amounts less than $1.

. . . .

The election required by this subsection shall be made in a manner prescribed by the director on the taxpayer's return for the taxable year in which the system is installed and placed in service. . . . An election once made is irrevocable.

(Emphases added.)

Subsections (f) through (h) only apply to situations where a taxpayer's claimed RETITC exceeds their tax liability. Subsection (f) provides that a taxpayer may use excess RETITC to be carried over and applied to tax liability in subsequent years (the "nonrefundable" option), unless an election is made under subsections (g) and (h). Subsections (g) and (h) provide that a taxpayer may elect to have excess RETITC refunded to them (the "refundable" elections) if the requirements in those subsections are met. Under subsection (g), a taxpayer is eligible to receive a refund of excess RETITC if, after reducing the eligible tax credit by 30%, it exceeds the income tax payment due from the taxpayer. Subsection (h) allows for a full refund of excess RETITC over payments due where, among other things, the taxpayer's adjusted gross income is $20,000 or less, or $40,000 or less if married and filing jointly. Subsections (g) and (h) explicitly provide that an election under either subsection "shall be made in a manner prescribed by the director on the taxpayer's return for the taxable year in which the

system is installed and placed in service" and that "[a]n election once made is irrevocable."

Here, the Department prescribed 2012 Form N-342 as the means to claim the tax credit under HRS § 235-12.5. The relevant portions of Petitioners' submitted 2012 Form N-342s appear in the record as follows:

**IRREVOCABLE ELECTION ON HOW TO TREAT THE TAX CREDIT** THIS SECTION MUST BE COMPLETED.

42. I elect to treat the tax credit as: (check only one box) Note: Once an election is made, it cannot be revoked or amended.

    ☒ a. Refundable (Go to line 43 and complete lines 43 through 47; skip lines 48 through 55.)
    ☐ b. Nonrefundable (Go to line 48 and complete lines 48 through 55; skip lines 43 through 47.)

**REFUNDABLE TAX CREDIT** Complete this section if you checked the box on line 42a.

43. Check the appropriate box:

    ☐ a. I elect to treat the tax credit for a solar energy system as refundable. The amount of the tax credit will be reduced by 30%.
    ☒ b. I elect to treat the tax credit for a solar energy system or a wind-powered energy system as refundable. ALL of my income is exempt from Hawaii taxation under a public retirement system or received in the form of a pension for past services or my Hawaii adjusted gross income is $20,000 or less ($40,000 or less if filing jointly).

. . . .

47. If you checked the box on line 43(b), enter the amount from line 14, 26, 39, 40, or 41. This is your refundable renewable energy technologies income tax credit. Enter this amount, rounded to the nearest dollar, on the appropriate line on Schedule CR or Form N-13, whichever is applicable.

Important to this case, immediately above line 42, it states: "IRREVOCABLE ELECTION ON HOW TO TREAT THE TAX CREDIT[.] THIS SECTION MUST BE COMPLETED." (Emphasis added.) Based on the plain language of HRS § 235-12.5, 2012 Form N-342 is not compatible with the statute.

As noted above, HRS § 235-12.5(f)-(h) only apply to situations where a taxpayer's claimed RETITC exceeds their tax liability. Thus, pursuant to the plain language of the statute: excess RETITC is a threshold qualification for making elections pursuant to subsection (f), (g), and (h). Line 42 of 2012 Form N-342 reflects a combination of election options under subsections (f), (g), and (h): the decision of whether to treat excess RETITC as "nonrefundable" (carry over excess credits to subsequent years' tax liability) or "refundable" (receive a full or partial refund of the excess credit). Nothing in the statute requires a taxpayer to make such an election where, as in this case, no excess RETITC exists.

It appears that the Tax Appeal Court and the ICA interpreted HRS § 235-12.5 based on a strict construction of the "irrevocable" language in subsections (g) and (h). Neither the plain language nor legislative history of the statute explains why refundable elections under subsections (g) and (h) are

irrevocable. Nonetheless, we conclude based on the plain language of the statute that taxpayers who do not have excess RETITC should not be required to make elections on a tax form that only apply to the treatment of excess tax credit under HRS § 235-12.5(f)-(h). In other words, a taxpayer without an excess RETITC (the tax credit does not exceed tax liability owed) should not be required to decide whether a non-existent excess credit is refundable or non-refundable.

Because line 42 of 2012 Form N-342 required that a taxpayer with no excess RETITC make an "irrevocable" election that did not apply to them, the form is incompatible with HRS § 235-12.5(f)-(h). Under our interpretation of the statute, only taxpayers with excess RETITC should be required to make such an election on how to treat their excess RETITC. This is consistent with the plain meaning of HRS § 235-12.5, and also comports with our existing recognition that "tax laws should be strictly construed and any doubt resolved in favor of the public." Kaheawa Wind Power, LLC v. Cnty. of Maui, 146 Hawai'i 76, 90, 456 P.3d 149, 163 (2020) (first quoting In re Assessment of Taxes, Com. Pac. Cable Co., 16 Haw. 396, 400 (Haw. Terr. 1905) (citation and internal quotation marks omitted); and then citing Narmore v. Kawafuchi, 112 Hawai'i 69, 82, 143 P.3d 1271, 1284 (2006)).

18

Having determined that 2012 Form N-342 is incompatible with the statute, we next consider whether the instructions that accompanied the form are compatible with the statute. The instructions state:

> A taxpayer may elect to treat the tax credit as nonrefundable or refundable. If a taxpayer elects to treat the tax credit as nonrefundable, the tax credit allowed shall be claimed against the net income tax liability for the taxable year. A tax credit that exceeds the taxpayer's income tax liability may be used as a credit against the taxpayer's income tax liability in subsequent years until exhausted. A taxpayer may elect to treat the tax credit as refundable under the following circumstances:
>
> - For solar energy systems, a taxpayer may elect to reduce the eligible credit amount by 30%. If this reduced amount exceeds the amount of income tax payment due from the taxpayer, the excess of the credit amount over payments due will be refunded to the taxpayer.
>
> - For any renewable energy technology system, an individual taxpayer may elect to have any excess of the credit over payments due refunded to the taxpayer without any further reduction if (1) ALL of the taxpayer's income is exempt from taxation under section 235-7(a)(2), Hawaii Revised Statutes (HRS) . . . ; or (2) the taxpayer has Hawaii adjusted gross income of $20,000 or less (or $40,000 or less if filing a tax return as married filing jointly).
>
> . . . .
>
> A separate election may be made for each separate system that generates a tax credit. Once an election is made to treat the tax credit as nonrefundable or refundable, the election cannot be revoked. An amended return cannot be filed to change the tax credit from nonrefundable to refundable or from refundable to nonrefundable.
>
> All claims for credit, including any amended claims, must be filed on or before the twelfth month following the close of the taxable year for which the credit may be claimed.

Similar to 2012 Form N-342, the accompanying instructions do not reflect that nonrefundable or refundable elections made pursuant to HRS § 235-12.5(f)-(h) are predicated

19

on whether a taxpayer's RETITC <u>exceeds</u> their tax liability. Again, the threshold qualification for such elections under subsections (f)-(h) is <u>excess RETITC</u>, yet the first sentence of the relevant portion of the instructions improperly states that "[a] taxpayer may elect to treat <u>the tax credit</u> as nonrefundable or refundable." Accordingly, we conclude that the instructions are also inconsistent with HRS § 235-12.5.

We conclude that the ICA erred in holding that 2012 Form N-342 and its accompanying instructions are compatible with HRS § 235-12.5. Petitioners did not have excess RETITC over their tax liability, and thus should not have been compelled to make the elections on lines 42 and 43 of the 2012 Form N-342. Further, the Department incorrectly reduced Petitioners' RETITC by 30% in the Final Assessment, an option under HRS § 235-12.5(g) for refunding excess RETITC that was inapplicable to Petitioners.

We thus conclude that the ICA erred in its interpretation of HRS § 235-12.5 and in its ruling that the Department's Final Assessment should be affirmed. The Tax Appeal Court also erred in precluding Petitioners from receiving any RETITC. We conclude that Petitioners are entitled to the RETITC of $17,250 claimed in their 2012 income tax return.

20

## IV.  CONCLUSION

Based on the foregoing, we vacate the ICA's Judgment on Appeal, filed on November 13, 2024.  We further reverse the Tax Appeal Court's Final Judgment, filed on March 15, 2024.

| | |
|---|---|
| Blake Goodman | /s/ Mark E. Recktenwald |
| Blanca Goodman | |
| self-represented petitioners | /s/ Sabrina S. McKenna |
| | |
| Anne E. Lopez | /s/ Todd W. Eddins |
| Nathan S.C. Chee | |
| Cynthia M. Johiro | /s/ Lisa M. Ginoza |
| Joshua J. Michaels | |
| for respondent | /s/ Vladimir P. Devens |

